**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
                                                              :    Chapter 7

In re:                                           :

                                                               :    Case No. 14-35443 (CGM)

Rodney Wayne Weidenbenner
and Michele Ann Weidenbenner,

                                       Debtor(s).

--------------------------------------------------------------X

## MEMORANDUM DECISION FINDING STAY VIOLATION AND AWARDING DAMAGES

**A P P E A R A N C E S :**

Law Offices of Dario Di Lello
1542 Route 52, Suite 1
Fishkill, NY 12524
*Attorneys for the Debtors*
        By:    Dario Di Lello, Esq.

Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036-4036
*Attorneys for Wells Fargo Bank, N.A.*
        By:    Christopher R. Mirick, Esq.
                 Samuel S. Cavior, Esq.

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

        Before the Court is Debtors' motion alleging that an administrative freeze on Debtors' bank accounts by Wells Fargo violated the automatic stay and seeking damages. For the below reasons, the Court now finds that the administrative freeze did violate the stay, the turnover provisions of the Code do not excuse the violation, and that Debtors have standing to prosecute the violation and are entitled to actual damages.

**Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and (E) (orders to turnover property of the estate).

**Background**[1]

The Debtors filed for chapter 7 relief on March 7, 2014. At the time of filing, the Debtors had four deposit accounts at Wells Fargo Bank, N.A. ("Wells Fargo"). In the petition, the Debtors claimed as exempt the total amount of the balances in the bank accounts pursuant to § 522(d)(5).

On March 12, 2014, Wells Fargo placed an "administrative pledge"[2] on all four of the Debtors' accounts in the aggregate amount of $6,923.54. Specifically, the following amounts in each account were subject to the administrative pledge: $4,542.38 in account ending in 5356; $1,622.57 in account ending in 2148; $664.59 in account ending in 6336; and $94.00 in account ending in 4821. As a result of the freeze, the Debtors were unable to use the funds in their bank accounts.

Before they received notice of the freeze, the Debtors had issued checks to cover various bills. Due to the freeze, some of Debtors' checks bounced. The Debtors were charged a $25.00 penalty by Kohl's as a result of the insufficient funds in Debtors' accounts to cover a payment made to Kohl's.

---

[1] Unless otherwise indicated all background facts have been stipulated to by the parties in the Joint Statement of Facts and Issues ("JS"), ECF No. 29.

[2] This is a term that is used by Wells Fargo to describe the freezing of a certain amount of funds in Debtors' bank accounts without their consent so that they are unable to access the specific amount of money subject to the pledge, which in this case was $6,923.54. The Court will use the term pledge and freeze interchangeably.

The same day that the administrative pledge was placed on the account, Wells Fargo sent a notice to the chapter 7 trustee via email and regular mail.  The notice advised the trustee of the freeze and requested directions for what should be done with the estate funds.  The funds were not turned over to the trustee.   On March 17, 2014, the trustee directed Wells Fargo, via fax, to release the entire amount of estate funds to the Debtors.  That same day, Wells Fargo sent notices to the Debtors via mail and email that the balances had been released.

On March 23, 2014, the Debtors filed a motion alleging that Wells Fargo violated the stay by placing the administrative freeze on their bank accounts.  Mot., ECF No 10.[3]  Wells Fargo did not file formal opposition to this motion until July 15, 2014.  Obj., ECF No. 18.  In its opposition Wells Fargo argues that it did not violate the stay because upon filing the funds in Debtors' accounts were no longer payable to the debtors and because it was required to turn over the funds to the trustee pursuant to § 542(b).

The Debtors filed their reply on July 21, 2014.  Reply, ECF No. 20.  The Court held a hearing to consider the matter on July 22, 2014.  At that hearing, the Court set the matter for an evidentiary hearing so that it could take testimonial evidence from a "high ranking policy person from Wells Fargo" regarding how and why Wells Fargo implemented its administrative pledge policy.  *See* July 22, 2014 Tr. 9:8-12. On October 6, 2014, the Court held an evidentiary hearing on this issue.

At the evidentiary hearing, Luana Tafoya, Operations Manager, Assistant Vice President ("Ms. Tafoya"), testified that upon learning of an individual account holder's chapter 7 bankruptcy filing, an employee of Wells Fargo looks at the accounts and determines the amount of the pledge that should be placed on the account.   Tr. 25:15-26:15.  A pledge is only placed on

---

[3] Unless otherwise indicated, all ECF references are to the electronic docket of case number 14-35443.

accounts where the aggregate[4] balance of funds the bank owes to the estate is $5,000 or more. *Id.* at 25:20. Wells Fargo does not freeze any funds if the aggregate balance of the funds considered property of the estate is less than $5,000. *Id.* 38:10-39:6. That is, an account holding property of the estate in the amount of $4,999.99 is not placed on hold and a bankruptcy debtor continues to have access to these monies. *Id.*

## Discussion

Upon receiving notice of a chapter 7 individual bankruptcy filing, Wells Fargo places an "administrative pledge" on bank accounts of individual chapter 7 filers. The pledge prevents a debtor from accessing his or her money and operates essentially as a "freeze" on the amount pledged. Wells Fargo argues that only funds that it determines to be property of the estate are made inaccessible to the debtor and that post-petition deposits, which would not qualify as property of the estate, remain accessible by the debtor.

The question before the Court is whether the "administrative pledge" that Wells Fargo placed on the Debtors' bank accounts violated the automatic stay and if so, whether that violation can be disregarded because the funds were property of the estate and subject to turnover under § 542(b).

**Whether Wells Fargo's administrative freeze violates § 362**

The filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The stay also precludes "any act to transfer control over property of the estate." *Shimer v. Fugazy (In re Fugazy Exp., Inc.)*, 982 F.2d 769, 776 (2d. Cir. 1992). Congress amended the Code in 1984 to add the phrase

---

[4] In this case, each of the four Debtors' accounts had balances below $5,000. All four accounts were frozen because the aggregate of the four accounts balances was over $5,000.

"exercise control over" property of the estate. *Amplifier Research Corp. v. Hart*, 144 B.R. 693, 694 (E.D. Pa. 1992). Although there is no legislative history explaining why this amendment was added, *In re Albion Disposal, Inc.*, 217 B.R. 394, 405 (W.D.N.Y. 1997), the court in *Amplifier* stated that "Congress evidently believed that the purpose of staying acts for possession was defeated if plaintiffs were still free to try to control or otherwise direct how the debtor used his property. Clearly at some point, 'control' over another's property becomes constructive possession." *Id.* The phrase "to exercise control" should be interpreted in a way that gives effect to its plain meaning. *Thompson v. GMAC, LLC*, 566 F.3d 699, 702 (7th Cir. 2009). To "exercise control" is "'to exercise restraining or directing influence over' or 'to have power over.'" *Id.* ("Holding onto an asset, refusing to return it, and otherwise prohibiting a debtor's beneficial use of an asset all fit within this definition, as well as within the commonsense meaning of the word.").

It is not disputed that the balances in each of the Debtors' bank accounts at the time of filing became property of the estate. JS ¶ 44. Thus by placing an administrative pledge on the Debtors' accounts, Wells Fargo necessarily exercised control over property of the estate. Wells Fargo attempts to side-step this conclusion by arguing that the funds held in a bank account are not the tangible property of the Debtors. That is, Wells Fargo is not holding the Debtors' physical money; rather, the bank account "is nothing more than a promise to pay, from the bank to the depositor"—it is a debt owed by Wells Fargo to the Debtors. Obj. ¶ 17 (citing *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21 (1995)). Upon the filing of the petition, that "promise to pay" became property of the estate and the payee on the account changed from the Debtors to the chapter 7 trustee "by operation of law." *Id.* ¶ 18. Even if Wells Fargo is correct

that the payee changed by operation of law, this does not change the fact that Wells Fargo clearly exercised control over property of the estate in violation of the automatic stay.

After the bankruptcy case was filed, Wells Fargo did not create new deposit accounts in the trustee's name. Instead, it placed a hold on a tangible amount of money in Debtors' bank accounts. As Ms. Tafoya's testimony at the evidentiary hearing demonstrates, Wells Fargo, by itself, made the determination to only place a freeze on accounts of $5,000 or more. The freezing of deposit accounts was not mandated by the Bankruptcy Code, ordered by the Court, or requested by the chapter 7 trustee. Wells Fargo simply decided to place a freeze on property of the estate and unilaterally determined who was allowed to access it. The Court cannot think of a better example of "control over property of the estate." 11 U.S.C. § 362(a)(3); *see In re Mwangi*, 432 B.R. 812 (B.A.P. 9th Cir. 2010) ("Wells Fargo asserts it did not exercise control over property of the estate. We disagree. Wells Fargo could have paid the account funds to the trustee; it did not. Wells Fargo could have released the account funds claimed exempt to the Appellants when demand was made; it did not. Wells Fargo could have sought direction from the bankruptcy court, by way of a motion for relief from stay or otherwise, regarding the account funds; it did not. Instead, it chose to hold the funds until a demand was made for payment that it alone deemed appropriate. If that is not 'exercising control over' the funds, we don't know what is."); *see also In re Kessler*, 2011 WL 1042617, at *2 (Bankr. S.D. Cal. Mar. 4, 2011) ("[T]he Court agrees it necessarily follows that the Estate Funds are protected by the automatic stay.").

**Whether § 542 is an exception to § 362(a)**

To the extent Wells Fargo relies on § 542(b) for the premise that no stay violation occurred, such reliance is misplaced. Section 542(b) states as follows:

> Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or

>   payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C § 542(b). Wells Fargo argues that its actions were mandated by § 542(b), so those actions could not have constituted violations of § 362(a). The Court does not find this reasoning credible.

For all of Wells Fargo's grandstanding about complying with § 542, the Court cannot find, on the evidence before it, that Wells Fargo's policy on administrative pledges complies with § 542(b). Section 542(b) requires Wells Fargo to turn over "property of the estate" to the trustee. 11 U.S.C. § 542(b). Even assuming that Wells Fargo can comply with this section by simply mailing a notice of the administrative pledge to the trustee, Wells Fargo has admitted that it does this only if the aggregate balance of property of the estate funds totals more than $5,000. This $5,000 threshold is completely arbitrary and simply does not conform to the plain language of § 542.

Under the Bankruptcy Code, all property, no matter how miniscule it may be, is property of the estate. 11 U.S.C. § 541. Thus, under its own logic, Wells Fargo violates § 542(b) every time it fails to place an administrative freeze on account with a balance below $5,000. Wells Fargo's assertion that it freezes property of the estate because of its duties under § 542 is simply not credible. The fact that Wells Fargo describes its policy in terms of "risk tolerance," rather than the absolute mandates of the Code, reinforces the conclusion that Wells Fargo knows that its policy is not in compliance with § 542, as it argues.

Even if the Court did find Wells Fargo's explanation credible, that would still not excuse Wells Fargo's stay violation. In support of its argument, Wells Fargo quotes the Supreme Court's decision in *Strumpf*, where the Court stated: "[W]e will not give § 362(a)(3) . . . an

interpretation that would proscribe what § 542(b)'s 'exception' and § 553's general rule were plainly intended to permit: the temporary refusal of a creditor to pay a debt that is subject to setoff." *Strumpf*, 516 U.S. at 21. *Strumpf* is not applicable here. On its face, *Strumpf* is clearly limited to setoff rights. Wells Fargo is not a creditor of the Debtors' and has no right to set-off. JS ¶ 8 (stipulated by the parties that Wells Fargo is not a creditor and has no right to set-off); *see also In re Holden*, 236 B.R. 156, 163 (Bankr. D. Vt. 1999) (construing *Strumpf* narrowly and limiting its holding to cases where banks are preserving set-off rights); se*e also In re Megan–Racine Assocs., Inc.*, 203 B.R. 873, 882 (Bankr. N.D.N.Y. 1996) (*rev'd on other grounds* 198 B.R. 650 (N.D.N.Y. 1996)) (r*ev'd on other grounds* 102 F.3d 671 (2d Cir. 1996)) ("It is a fundamental axiom of bankruptcy law that the automatic stay is pervasive and exemptions from the stay are strictly construed. The logic of the foregoing compels a narrow reading of *Strumpf*. In addition, the language of the decision itself dictates that its holding is limited to the so called 'banker's dilemma' of preserving a creditor's set off rights.").

To read *Strumpf* more broadly would add an exception to the automatic stay that was clearly not contemplated by Congress. This Court is obligated to interpret the Code according to its plain meaning. *See Tyler v. Douglas,* 280 F.3d 116, 123 (2d Cir. 2001), *cert. denied*, 536 U.S. 906 (2002). Where a statute is clear and unambiguous, that is the end of the inquiry except in "rare and exceptional circumstances." *Id.* (internal quotations omitted). Generally, "a court may choose not to apply the plain reading if it would clearly defeat the statute's obvious purposes . . . or lead to absurd results." *See In re Asher*, 488 B.R. 58, 65 (Bankr. E.D.N.Y. 2013) (listing cases).

Section 362(b) explicitly sets forth twenty-eight separate actions to which the automatic stay does not apply—§ 542(b) is not one of them. Additionally, § 542 references § 362(a)(7),

which deals with setoff, and yet it does not mention § 362(a)(3). *See* 11 U.S.C. § 542(c).[5] It is at odds with the plain language of the Bankruptcy Code to read into the Code an exception to the automatic stay as enormous as the one proposed by Wells Fargo in the absence of express statutory language. This is especially true in light of the fact that Congress clearly contemplated exceptions to the stay in drafting § 362(b) and contemplated § 362(a) when drafting § 542. Thus, Congress knew how to create exceptions to automatic stay and chose not to do so in this case. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.*, 511 U.S. 164, 176-77 (1994).

Such an interpretation is also consistent with the Bankruptcy Code's general statutory scheme. "The automatic stay provision is one of the fundamental debtor protections provided by the bankruptcy laws, designed to relieve the financial pressures that drove debtors into bankruptcy." *Eastern Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (internal quotations omitted). The automatic stay ensures that the remainder of Congress' statutory scheme can be effectuated by preserving estate assets. Unless the stay is lifted by the bankruptcy court, it remains in effect until the case is concluded. *Fugazy*, 982 F.2d at 776 (citing 11 U.S.C. § 362(c)). The Bankruptcy Code does not permit a party to engage in "self-help" in derogation of the stay. *Id.*

While the Court is sympathetic to Wells Fargo's argument that it has a duty under § 542(b) that could cause it to violate § 362(a), it can avoid this problem by simply waiting for the chapter 7 trustee to ask for the balance of any deposit accounts to be turned over. Once a petition is filed, debtors continue to eat, drive to work, and take care of children; they may not receive a

---

[5] "Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced."

post-petition paycheck for days or weeks. Wells Fargo's policy of freezing funds upon filing makes it more likely that debtors will squirrel away secret stashes of cash prior to filing so that they can continue to meet their everyday needs. By eliminating unlawful policies such as this one, debtors will be encouraged to use bank accounts post-petition and a more accurate record of a debtor's financial situation will be available in the form of bank statements. The trustee and the Court will be better able to see what a debtor is spending money on and can choose to admonish (or not to admonish) that debtor accordingly—under the guidance of the Bankruptcy Code.

**Whether Debtors have standing to prosecute the stay violation**

Having found that the administrative pledge amounted to a violation of the automatic stay under § 362(a)(3), the Court must now consider whether the Debtors have constitutional and statutory standing to pursue damages pursuant to § 362(k). *See Wells Fargo Bank, N.A. v. Jimenez*, 406 B.R. 935, 941 (D.N.M. 2008). To establish constitutional standing, the Debtors must show: "(1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). Additionally, pursuant to § 362(k), "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

In either case, Debtors must demonstrate an injury. Here, the Debtors have done so. The Debtors were charged a $25.00 penalty by Kohl's as a result of the insufficient funds in Debtors' accounts to cover a payment made to Kohl's. The penalty was placed on Debtors' account post-petition and after the trustee had released the funds back to the Debtors—as such, it was the

Debtors and not the estate that was injured. Thus, the Debtors were monetarily injured by the administrative freeze, which was placed on the account by Wells Fargo, thereby "causing" the injury. A favorable decision in this Court will likely redress this injury as Wells Fargo can be made to repay the Debtors' the $25.00 penalty. Due to the fact that, the Debtors incurred a $25.00 penalty and this amount has not been repaid, this case differs from other cases cited by Wells Fargo where courts found that no injury had occurred. *See, e.g.*, *In re Calvin*, 329 B.R. 589, 603 (Bankr. S.D. Tex. 2005) (finding no injury for account freeze where debtors had already been refunded actual damages of $75.00 in returned check fees). Here, the Debtors' have established constitutional standing.

Other courts that have addressed this issue have found that debtors in similar situations have not suffered any injury because the funds frozen by the bank were property of the estate. As such, the debtors did not have the right to claim an injury for being unable to access funds that they should not have been accessing in the first place. *See In re Kessler*, 2011 WL 1042617, at *2 ("The Trustee, as the estate's administrator, was the sole person entitled to direct Wells Fargo's disposition of these funds. Accordingly, it follows that the Trustee is the sole person with standing to assert injury arising from Wells Fargo's administrative freeze of the Estate Funds during the time period that the Debtors had no right to use these funds."); *Wells Fargo Bank, N.A. v. Jimenez*, 406 B.R. at 941 ("Because Debtor could not have accessed the accounts without the Trustee's permission—at least, not consistently with her obligation to surrender the accounts to the Trustee—the Court concludes that she suffered no injury caused by the administrative freeze."); *In re Mwangi*, 764 F.3d 1168, 1179 (9th Cir. 2014) ("The Debtors cannot allege a plausible injury under § 362(a)(3) based on the operation of Wells Fargo's administrative pledge before the account funds revested because the Debtors had no right to

possess or control the account funds during this period."). This approach is not consistent with the Code and the practical realities of debtors' lives.

For example, in *In re Bucchino*, the court stated that:

> A debtor has no right to spend funds that belong to the estate even if subject to a claim of exemption. Such funds do not belong to the debtors. Moreover, the debtors' duty pursuant to 11 U.S.C. § 521(a)(4) to surrender to the chapter 7 trustee their rights in bank accounts and estate funds claimed exempt, at least when their claim of exemption is denied, creates a corresponding duty not to draw and spend funds from the accounts prior to allowance or disallowance of the claim of exemption in derogation of that duty.

439 B.R. 761, 772 (Bankr. D.N.M. 2010). While debtors do have a duty under § 521(a)(4) to "surrender" property of the estate to the trustee, to say that this duty corresponds to the bank's duty to turn over the funds to the trustee is erroneous. The use of the term "surrender" instead of the term "turnover" in § 521(a)(4) is notable and indicates that a debtor's duty under § 521 is less profound than the duty placed on Wells Fargo under § 542. 4 *Collier on Bankruptcy* ¶ 521.16 (16th ed. 2014). As is stated in one of the leading treatises on bankruptcy law:

> *Unlike the duty of a third party holding property of the estate to turn over that property under section 542*, the debtor's duty is simply to relinquish the debtor's rights in property to the trustee, and to cooperate with the trustee's efforts to take possession of it should the trustee choose to do so. This reading conforms to the interpretation of "surrender" in other Code sections. Thus, where the debtor has nonexempt cash or there are other liquid assets in the estate that the trustee wishes to distribute, the trustee will normally demand immediate control or surrender of such assets and the debtor is required to comply.

*Id.* (emphasis added). In this case, the Debtors did relinquish control of their bank accounts by listing the accounts on schedule B of their petition and by cooperating with the trustee. *See* Sched. B, ECF No. 1. Thus, debtors complied with the Code.

Moreover, those cases that have punished debtors for failing to comply with § 521(a)(4) have crafted a remedy not supported by the Code. Nowhere in the Code does it say that a debtor loses standing to pursue a claim under § 362(k) by failing to comply with § 521(a)(4). Nor does

the Code indicate that a creditor that violates the stay can absolve itself of the violation by pointing out the debtor's unauthorized use of property of the estate.  The Code contemplates that the trustee, not the creditor, will hold a debtor responsible for any dereliction of duty.  For example, for failing to cooperate with the trustee, a debtor's case may be dismissed under §707(a) or the debtor's discharge may be denied under § 727(a).  *See* 11 U.S.C. § 707(a)(3) (indicating that failure to file information required by § 521(a)(2); § 727(a)(2) (denying discharge to a debtor who conceals or transfers property of the estate after the petition date); § 727(a)(4)(D) (denying discharge to a debtor who withholds information from an officer of the estate).

"The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement . . . .  The judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs."  *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 97 (1981). While it may be true that Debtors' use of bank account funds was itself improper, Wells Fargo cannot use the Debtors' improper conduct to shield itself from the consequences of its own stay violation; this is especially true where the remedy for such a stay violation has been selected by Congress in the form of § 362(k).

As § 362(k) makes clear, the stay violation does not need to have occurred against the debtor nor does it have to occur against the debtor's property for the debtor to bring an action for damages.  11 U.S.C. § 362(k)(1) ("[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.").  The only requirement is that an

individual be injured by "*any* willful violation." Here, the Court has already found that the administrative freeze on the Debtors' bank accounts was a stay violation and that the Debtors were injured by the $25.00 penalty. The Debtors have established statutory standing.

Section 362(k) mandates an award of damages when a willful stay violation occurs. See 11 U.S.C. § 362(k)(1) ("[A]n individual injured . . . *shall* recover actual damages, including costs and attorneys' fees.") (emphasis added). As such, the Court awards the Debtors' $25.00 as well as their costs and attorney's fees for having to bring this motion.

## Conclusion

For the foregoing reasons, the Court finds that by placing an administrative freeze on property of the estate, Wells Fargo violated the automatic stay; that Debtors have standing to prosecute an action for damages of the automatic stay; and that Debtors are entitled to actual damages in the amount of $25.00, plus costs and attorneys' fees for bringing this motion. The Debtors shall submit a proposed order to the Court consistent with this Memorandum Decision.

Dated: Poughkeepsie, New York
       December 12, 2014            */s/ Cecelia G. Morris*
                                    CECELIA G. MORRIS
                                    CHIEF UNITED STATES BANKRUPTCY JUDGE